**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Antuane R. HOLTON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 3, 2006.
Filed Aug. 24, 2006.

offense gravity score for the PIC charge.    N.T., 4/28/2005, at 5–6.

Ari D. Weitzman, Carlisle, for appellant.

Edward M. Marsico, Jr., Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: HUDOCK, TODD and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Antuane R. Holton appeals from the judgment of sentence entered on August 9, 2004, in the Court of Common Pleas, Dauphin County. Appellant was convicted of possession with intent to deliver a controlled substance (PWID—crack cocaine) [1] and possession of drug paraphernalia.[2] He was sentenced from 32 months

---

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(32).

to 72 months, a fine of $200 plus costs for the PWID charge, and a fine of $25 plus costs for the possession of drug paraphernalia charge. Upon careful review, we affirm.

¶ 2 The relevant facts and procedural history of the case are as follows: On February 4, 2003, Detective Vogel of the Dauphin County Drug Task Force was working as an undercover officer for a buy-bust detail in Harrisburg, Pennsylvania. Detective Vogel was riding in a vehicle with a confidential informant (CI) when he made contact with Tanya Fitts, who offered to obtain $40 worth of crack cocaine for him. Initially, Ms. Fitts attempted to obtain the drugs at two separate residences along Sixth Street in Harrisburg. She was unsuccessful in these attempts, and, therefore, she entered the vehicle with Detective Vogel and the CI and directed them to the Off the Wall Bar at Sixth and Schuylkill Streets where she was going to attempt to obtain the drugs. Upon arrival at the bar, Ms. Fitts exited the vehicle and walked into the bar by herself. She returned to the vehicle and handed Detective Vogel the drugs. In return Detective Vogel handed Ms. Fitts $40 in two marked $20 bills. Detective Vogel testified that Appellant followed Ms. Fitts out of the bar, spoke briefly with her, and waited across the street while Ms. Fitts delivered the drugs to Detective Vogel. At the time of the delivery to Detective Vogel, Appellant was talking on his cell phone. Ms. Fitts indicated to Detective Vogel that she obtained the drugs from Appellant. Detective Vogel testified that Ms. Fitts described Appellant to him as the man who gave her the drugs inside the bar. Ms. Fitts then began walking back toward Appellant with the $40 in marked bills when both she and Appellant were arrested. Appellant was subsequently charged with criminal conspiracy, PWID, delivery of a controlled substance, and possession of drug paraphernalia.

¶ 3 Appellant filed a pre-trial suppression motion on June 16, 2003, stating that there was no probable cause for his arrest and seizure and, therefore, that all evidence obtained from Appellant should be suppressed as illegally seized. A hearing was held on February 10, 2004, in which the Honorable John F. Cherry denied Appellant's motion to suppress. On February 11, 2004, after a hearing in front of the Honorable Scott A. Evans, Appellant was found guilty of PWID and possession of drug paraphernalia. Appellant was sentenced on August 9, 2004, from 32 months to 72 months imprisonment in a state correctional institution, a fine of $200 plus costs for the PWID charge, and a fine of $25 plus costs for the paraphernalia charge.

¶ 4 On January 24, 2005, Appellant filed a *pro se* PCRA petition requesting *nunc pro tunc* relief. Attorney Weitzman was appointed to represent Appellant on January 28, 2005. Accordingly, Appellant through Attorney Weitzman filed a supplemental brief to Appellant's *pro se* PCRA petition on May 20, 2005. A PCRA hearing was held, and Appellant's direct appeal rights were reinstated on July 28, 2005. On August 4, 2005, Appellant filed a motion for modification of sentence which was denied on October 19, 2005. Appellant filed a notice of appeal to this Court on November 3, 2005. The trial court ordered Appellant to file a 1925(b) statement; he complied. The trial court did not issue an opinion.

¶ 5 Appellant presents one issue for our review:

I. Whether the trial court erred in denying Appellant's motion to suppress evidence because the evidence was obtained as a result of an illegal arrest and admitted in violation of

the Confrontation Clause and the rules of evidence.

Appellant's brief, at 5.

In considering the denial of a suppression motion, our standard of review is well settled. We must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings. In doing so, we may consider only the prosecution's [evidence] and [Appellant's] evidence to the extent it is not contradictory. If the evidence presented at the suppression hearing supports these findings of fact, we may not reverse the lower court unless its accompanying legal conclusions are in error.

*Commonwealth v. Ballard,* 806 A.2d 889, 891 (Pa.Super.2002) (citations and quotation marks omitted).

¶ 6 Appellant's first contention is that the evidence was obtained as a result of an illegal arrest without probable cause. It is true that the question of whether probable cause exists in a given circumstance is so fact-sensitive that it is difficult to extrapolate from other cases. *Commonwealth v. Dunlap,* 846 A.2d 674, 676 (Pa.Super.2004). Probable cause is determined by considering the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime. *Commonwealth v. Taylor,* 850 A.2d 684, 687 (Pa.Super.2004). As to what factors should be considered in determining whether probable cause to arrest exists, this Court has stated:

All of the detailed facts and circumstances must be considered. The time

is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important, the movements and manners of the parties are important.

*Dunlap,* 846 A.2d at 676.

¶ 7 Additionally, this Court has noted:

Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision.

*Commonwealth v. Dommel,* 885 A.2d 998, 1002 (Pa.Super.2005) (citations and quotation marks omitted).

¶ 8 Detective Vogel, an officer assigned to the Dauphin County Drug Task Force for approximately six years, testified that Ms. Fitts entered the bar looking for crack cocaine, and, after a few minutes, she exited the bar followed by Appellant. *See*

N.T. Suppression hearing, 2/10/04, at 5.[3] Ms. Fitts and Appellant had a brief conversation outside the bar and Ms. Fitts pointed at the vehicle in which Detective Vogel and the CI were sitting. *Id.,* at 12. Ms. Fitts then returned to the vehicle and handed Detective Vogel two blue mini zip lock baggies. *Id.,* at 5–6. Ms. Fitts stated to Detective Vogel that Appellant was going to give her a rock of cocaine for completing the sale. *Id.,* at 12. Additionally, Detective Vogel testified that he had Ms. Fitts describe the individual who sold her the drugs, to which she gave a description of Appellant. *Id.,* at 6. Detective Vogel was wearing a wire at the time of the drug transaction that recorded the conversation between Ms. Fitts and himself. *Id.,* at 7. Ms. Fitts indicated on the audio recording that she was going to obtain $40 worth of crack cocaine for Detective Vogel. *Id.,* at 7.

¶ 9 Detective Evans, an investigator assigned to the Organized Crime and Vice Control Unit of the Harrisburg Police Department, testified that he was also involved in the buy-bust detail on February 4, 2003. *Id.,* at 22. Detective Evans was parked directly across the street from the bar where Ms. Fitts obtained the drugs, and, therefore, he had a clear view of the interactions between Ms. Fitts and Appellant. *Id.,* at 22. Detective Evans testified that Appellant left the bar directly behind Ms. Fitts and engaged in a short conversation with her before she returned to Detective Vogel's vehicle to give him the drugs. *Id.,* at 12, 23. Detective Evans stated that Ms. Fitts identified Appellant to Detective Vogel, Detective Vogel gave Ms. Fitts the $40, and, as Ms. Fitts began walking away from the vehicle, she was arrested. *Id.,* at 23. Appellant was also arrested at this time and 19 zip lock baggies of crack co-

caine, $500, and a cell phone were recovered from his person. *Id.,* at 23. Appellant testified that he did not give the drugs to Ms. Fitts and that he was standing outside the bar attempting to call a taxi cab because it was too noisy inside the bar. *Id.,* at 31–32. However, Appellant initially testified that he lived about a half of a block around the corner from the bar. *Id.,* at 33. The trial court weighed the testimony of Appellant against that of the detectives on the case and determined that the detectives' testimony was more credible. *Id.,* at 42. It is a well-settled principle that appellate courts must defer to the credibility determinations of the trial court as fact finder, as the trial judge observes the witnesses' demeanor first-hand. *Commonwealth v. Khalifah,* 852 A.2d 1238, 1240 (Pa.Super.2004). Despite the fact that no money was exchanged between Ms. Fitts and Appellant at the time of the transaction, we conclude that there was enough evidence to establish probable cause to arrest Appellant based upon the totality of the circumstances. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. *Dommel,* 885 A.2d at 1002. Therefore, Appellant's first contention fails.

¶ 10 Appellant's second contention is that the statements made by Ms. Fitts were admitted in violation of the Pennsylvania Rules of Evidence and Appellant's rights under the Confrontation Clause.[4] Specifically, Appellant alleges that the statements made by Ms. Fitts, which were heard on the audio tape admitted into evidence, are hearsay. Appellant objected to the admission of the audio tape because Ms. Fitts was an unavailable witness, and,

---

3. "Fitts" is misspelled as "Fitz" in the notes of testimony for the suppression hearing held on February 10, 2004.

4. U.S. Const. Amend. VI.

therefore, Appellant did not have the opportunity to cross-examine her.

¶ 11 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. *See* Pa.R.E. 801(c). Detective Vogel was testifying to statements made to him by Ms. Fitts, who was not present at the hearing, during the drug transaction. These statements were recorded on an audio tape, which the Commonwealth sought to introduce as evidence. These statements were offered to prove the truth of the matter asserted, *i.e.,* that Appellant sold crack cocaine to Ms. Fitts. The trial court admitted the statements on the audio tape made by Ms. Fitts under Pa.R.E. 803(25), the co-conspirator exception to the hearsay rule. Rule 803(25), the co-conspirator exception is stated, in pertinent part, as follows:

**Rule 803. Hearsay exceptions; availability of declarant immaterial**

(25) Admission by party-opponent. The statement is offered against a party and is

\* \* \*

(E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement may be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Pa.R.E. 803.

¶ 12 Under this exception, the out-of-court declarations of a co-conspirator may be introduced against another co-conspirator provided three requirements are satisfied. *Commonwealth v. Mayhue,* 536 Pa. 271, 292–93, 639 A.2d 421, 431 (1994). First, the prosecution must prove the existence of a conspiracy between the declarant and the defendant against whom the evidence is being offered. *Mayhue,* at 292–93, 639 A.2d at 431. Once this requirement is satisfied, the Commonwealth must show that the statements were made during the course of the conspiracy. Finally, the Commonwealth must show that the statements were made in furtherance of the common design. *Id.,* at 293, 639 A.2d at 431. As for the first requirement, we find that the Commonwealth presented enough evidence to prove that a conspiracy to distribute crack cocaine existed between Ms. Fitts and Appellant. The Commonwealth is only required to prove the existence of a conspiracy by a fair preponderance of the evidence. *Id.,* at 293, 639 A.2d at 432 (citation omitted). In addition, the Commonwealth need not establish such a preponderance through direct evidence. *Id.,* at 293, 639 A.2d at 432. Rather, a conspiracy, for purposes of the co-conspirator exception, may be established inferentially by showing the relation, conduct, or circumstances of the parties. *Id.,* at 293, 639 A.2d at 432. Detective Vogel testified that he had never met Ms. Fitts before February 4, 2004, and that she did not know he was an undercover narcotics officer. *See* N.T. Suppression hearing, 2/10/04, at 14–16. Ms. Fitts was not working for the police during this buy-bust detail, and, in fact, Detective Vogel testified that Ms. Fitts was an unwitting informant. *Id.,* at 16. Ms. Fitts facilitated the drug deal between Appellant and Detective Vogel by obtaining the crack cocaine from Appellant and delivering it to Detective Vogel in exchange for the marked bills that she was going to give to Appellant before she was arrested. We find this

sufficient to establish that Ms. Fitts was engaged in a conspiracy to distribute crack cocaine with Appellant. Accordingly, the first element is established. *Mayhue*, at 292–93, 639 A.2d at 431.

¶ 13 The second element is that the statements made by the declarant must have been made during the course of the conspiracy. Ms. Fitts, unbeknownst to her, was being recorded during the time she delivered the drugs to Detective Vogel. She made the statement to Detective Vogel regarding the identity of Appellant before she was handed the money and began to walk away from the vehicle. Accordingly, we find this element satisfied as well. *Mayhue*, at 293, 639 A.2d at 431. The last element is that the statements were made in furtherance of the common design. Ms. Fitts stated that she got the drugs from Appellant and then proceeded to describe him to Detective Vogel before she took the marked bills and began walking back toward Appellant. *See* N.T. Suppression hearing, 2/10/04, at 10, 12. Ms. Fitts' statements furthered the sale of the crack cocaine by informing the buyer, Detective Vogel, as to the identity of the supplier, Appellant. Accordingly, we find the third element to be satisfied. *Mayhue*, at 293, 639 A.2d at 431. As all three of the elements are satisfied, we find that the statements made by Ms. Fitts to Detective Vogel, which were recorded on the audio tape, are admissible against Appellant as statements made by a co-conspirator pursuant to Pa.R.E. 803(25). Thus, Appellant's second contention fails.

■ ¶ 14 Appellant's final argument is that the introduction of the statements made by Ms. Fitts are a violation of his right to confront the witnesses against him. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *Crawford v. Wash-*

*ington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). This bedrock procedural guarantee applies to both federal and state prosecutions. *Crawford*, 541 U.S. at 42, 124 S.Ct. 1354. The Confrontation Clause applies to "witnesses" against the accused—in other words, those who "bear testimony." *Id.*, 541 U.S. at 51, 124 S.Ct. 1354 (citation omitted).

¶ 15 The *Crawford* court declined to lay out a comprehensive definition of "testimonial" but it did provide a few examples. *Id.*, 541 U.S. at 68, 124 S.Ct. 1354. It stated that various formulations of this core class of "testimonial" statements exist: *ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used for prosecutorial purposes, extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.*, 541 U.S. at 51–52, 124 S.Ct. 1354 (citations and quotation marks omitted).

■ ¶ 16 Where testimonial statements are involved, the *Crawford* court noted that it did not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." *Id.*, 541 U.S. at 61, 124 S.Ct. 1354. A trial court's act of admitting statements deemed reliable by itself is fundamentally at odds with the right of confrontation. *Id.*, 541 U.S. at 61, 124 S.Ct. 1354. To be sure, the Confrontation Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Id.*, 541 U.S. at 61, 124 S.Ct. 1354.

It commands not that evidence be reliable but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Id.,* 541 U.S. at 62, 124 S.Ct. 1354. Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation. *Id.,* 541 U.S. at 63, 124 S.Ct. 1354.

¶ 17 Where "non-testimonial" hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. Accordingly, we must determine whether the statements made by Ms. Fitts, recorded on the audio tape, and testified to by Detective Vogel were "testimonial" or "non-testimonial" statements.

¶ 18 The distinction between "testimonial" and "non-testimonial" statements was addressed in *United States v. Hendricks,* 395 F.3d 173 (3rd Cir.2005). The issue in *Hendricks* was whether multiple conversations between the various defendants and other third parties surreptitiously intercepted by law enforcement through Title III wiretaps were testimonial statements. *Hendricks,* 395 F.3d at 181. The United States Court of Appeals held that these conversations should be characterized as "non-testimonial" statements because they do not fit within the framework given by *Crawford* to define "testimonial" statements. *Id.,* 395 F.3d at 181; *see also Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354.

¶ 19 The *Hendricks* court stated:

First and foremost, the recorded conversations here at issue neither fall within nor are analogous to any of the specific examples of testimonial statements mentioned by the *[Crawford]* Court. *Craw-*

*ford,* 541 U.S. at [51–52, 124 S.Ct. at 1374] (listing "prior testimony [given] at a preliminary hearing, before a grand jury, or at a former trial[,] and ... police interrogations" as examples of obviously testimonial statements). Second, the recorded conversations do not qualify as "testimonial" under any of the three definitions mentioned by the *[Crawford]* Court. They are not "ex parte in-court testimony or its functional equivalent," nor are they "extrajudicial statements ... contained in formalized ... materials, such as affidavits, depositions, prior testimony, or confessions." *[Id.,]* 541 U.S. at [51–52, 124 S.Ct. at 1364] (internal citations and quotations omitted). Each of the examples referred to by the *[Crawford]* Court or the definitions it considered entails a formality to the statement absent from the recorded statements at issue here. Even considered in perspective of the broad definition offered by the NACDL, the Title III recordings cannot be deemed "testimonial" as the speakers certainly did not make the statements thinking that they "would be available for use at a later trial." *Crawford,* 541 U.S. at [51–52], 124 S.Ct. at 1364 (quoting Brief of NACDL).

*Hendricks,* 395 F.3d at 181.

¶ 20 The *Crawford* court stated that "a witness who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354. The *Hendricks* court remarked that the surreptitiously monitored conversations and statements contained in the wiretap recordings are more akin to a casual remark made to an acquaintance and, therefore, are not "testimonial" for the purposes of *Crawford. Hendricks,* 395 F.3d at 182. The *Hendricks* court also determined that statements made between the CI and various other defendants were "non-testimoni-

al" because the defendants and co-conspirators did not realize that their statements were going to be used for prosecutorial purposes. *Id.*, 395 F.3d at 183. Additionally, the *Hendricks* court determined that these statements constituted admissions unwittingly made, and, therefore, were not subject to the *Crawford* rule. *Id.*, 395 F.3d at 183; *see also United States v. Saget*, 377 F.3d 223, 229 (2d Cir.2004) (holding that the defendant's statements to a CI were "non-testimonial" because he had no knowledge of the CI's connection to investigators and believed that he was having a casual conversation with a friend and potential co-conspirator).

¶ 21 First, we note that the recorded conversations on the audio tape do not fall within any of the three specific examples of "testimonial" evidence given by the *Crawford* court. Ms. Fitts' statements are not *"ex parte* in-court testimony or its functional equivalent," nor are they "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354. Finally, they are not statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.*, 541 U.S. at 51, 124 S.Ct. 1354. Ms. Fitts made the statements to Detective Vogel without knowledge that he was a police officer. She assumed that she was having a conversation with a co-conspirator, for whom she was attempting to obtain cocaine. Ms. Fitts' admissions were unwittingly made, without any indication that these statements may be used at a later time for prosecutorial purposes. *Hendricks*, 395 F.3d at 183; *see also Saget*, 377 F.3d at 229 (types of statements considered as "testimonial" share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a

courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings); *Davis v. Washington,* — U.S. —, —, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224, 237 (2006) (Statements are "non-testimonial" when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are "testimonial" when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.).

¶ 22 Additionally, Ms. Fitts had no indication that Detective Vogel was "surreptitiously" recording the conversation onto an audio tape that he would subsequently attempt to use for prosecutorial purposes. Further, the statements made by Ms. Fitts lacked the formality that is present in the three examples of "testimonial" statements set forth by the *Crawford* court. *Saget*, 377 F.3d at 229. Based upon the distinctions set forth in *Crawford*, and elaborated upon by the *Hendricks* court, we find that the statements made by Ms. Fitts were "non-testimonial" in nature. Accordingly, as the rule announced in *Crawford* is only applicable to "testimonial" evidence, it does not apply to bar the admission of Ms. Fitts' statements.

¶ 23 The *Saget* court stated that "while the continued viability of *Roberts* with respect to nontestimonial statements is somewhat in doubt, [the United States Court of Appeals] will assume for purposes of [their] opinion that its reliability analysis continues to apply to control nontestimonial hearsay, and that [the] precedents applying the *Roberts* analysis to such statements retain their force." *Saget*, 377 F.3d at 230. Accordingly, we apply the

two-prong test enunciated in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to determine the admissibility of Ms. Fitts' "non-testimonial" statements. Because Ms. Fitts' statements were "non-testimonial," the Confrontation Clause does not bar their admission so long as the statements fall within a firmly rooted hearsay exception or contain particularized guarantees of trustworthiness. *Saget,* 377 F.3d at 230; *see also Roberts,* 448 U.S. 56, 100 S.Ct. 2531. As discussed at length above, we find that Ms. Fitts' statements were properly admitted under the co-conspirator exception to the hearsay rule pursuant to Pa.R.E. 803(25)(E). Accordingly, as the statements fall within a firmly rooted hearsay exception, we find that the Confrontation Clause does not bar their admission. *Id.,* 377 F.3d at 230; *see also Roberts,* 448 U.S. 56, 100 S.Ct. 2531.

¶ 24 The trial court correctly denied Appellant's motion to suppress because the evidence was obtained as the result of a lawful arrest. The statements made by Ms. Fitts were admissible under the co-conspirator exception to the hearsay rule pursuant to Pa.R.E. 803(25)(E). Additionally, admission of these statements is not a violation of Appellant's Sixth Amendment right to confront the witnesses against him because the statements were "non-testimonial," and, therefore, not subject to the rule announced in *Crawford.* Further, these "non-testimonial" statements fall within a firmly rooted exception to the hearsay rule, and, therefore, are not barred by the Confrontation Clause. *Saget,* 377 F.3d at 230; *see also Roberts,* 448 U.S. 56, 100 S.Ct. 2531. Therefore, we affirm the judgment of sentence.

¶ 25 Judgment of sentence affirmed.