J-A24036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN PAUL DIGNAZIO, | |
| Appellant | No. 3205 EDA 2013 |

Appeal from the Judgment of Sentence October 22, 2013
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0001757-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED NOVEMBER 06, 2014**

Appellant, Shawn Paul Dignazio, appeals from the judgment of sentence entered on October 22, 2013, following his conviction of driving under the influence (DUI), highest rate, third offense.[1]  The trial court also found Appellant guilty of driving while license suspended, DUI related.[2]  Prior to trial, the Commonwealth withdrew all other charges.  (**See** N.T. Trial, 10/22/13, at 1).  On appeal, Appellant challenges the denial of his motion to suppress and the admission of the results of the blood alcohol content (BAC) test.  After review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(c), 3803(b)(4), and 3804(c)(3).

[2] 75 Pa.C.S.A. § 1543(b).

We take the underlying facts in this matter from the trial court's February 10, 2014 opinion.

On or about June 22, 2012 at approximately 2:30 a.m. Troopers [Martin] Wiley and [Patrick] Wade of the Pennsylvania State Police (PSP), Troop K, were on patrol in a marked vehicle. They received a radio report of a "theft in progress" at the Media Diner. It was reported that a heavyset white male left the Media Diner without paying for food. . . . The suspect was driving a dark Chevy Tahoe with dark windows toward Chester on Route 352. The troopers were stationary at the side of the road on Route 352 when [Appellant], traveling from the direction of the nearby Media Diner toward Chester and driving at a fast rate of speed, passed in his Black Chevy Tahoe.

With overhead lights and sirens activated, the troopers pursued [Appellant]. After following for about half a mile[,] they caught up to his vehicle. [Appellant] put on his turn signal and slowly pulled to the side of the road and entered a parking lot. During this period no motor vehicle violations were observed by the troopers. Following the stop[,] the patrol vehicle's speaker system was activated and [Appellant] was ordered to exit the vehicle, to turn away from the troopers, to step away from the vehicle and to lie on his stomach. [Appellant] did not immediately comply but exited the vehicle with both hands raised and walked toward the troopers. Eventually, after being ordered down several times, he responded by getting down to his knees. The troopers could not see into [Appellant's] vehicle and had their guns drawn. He was handcuffed and his pockets were searched.

As he handcuffed [Appellant,] Trooper Wiley detected the odor of alcohol on [Appellant]. Trooper Wiley asked [Appellant] for his name, date of birth and "where he was coming from." He responded that he was coming from the Free Mason's Lodge Meeting and stated that his license was suspended. [Appellant] told Trooper Wiley that his passport was in the center console of his vehicle. Trooper Wiley observed that [Appellant's] speech was slow and slurred when he responded and his eyes were blood shot. The odor of alcohol emanated from his person. [Appellant] was placed in the troopers' patrol vehicle. The odor of alcohol became stronger when [Appellant] was within the confines of the troopers' vehicle. He was transported to the

- 2 -

Media Diner where he was identified. Thereafter he was transported to the PSP Media barracks and a BAC breath test was administered. No field sobriety tests were performed. Trooper Wiley testified that at the point of the stop he did not know "the severity of the theft" and that he did not feel it would be safe to remove the handcuffs and conduct field sobriety tests under the circumstances.

Trooper Wade, a certified operator administered the test using the Datamaster DMT after a twenty minute period during which [Appellant] was observed. The Datamaster DMT that was used was properly certified as accurate in accordance with applicable Department of Health and Department of Transportation regulations and was tested and certified as falling within the acceptable range for calibration. The sample solution used was also analyzed and certified accurate. During the waiting period [Appellant] did not consume alcohol and did not regurgitate. [Appellant] was instructed to blow into the machine through a clean plastic mouthpiece and to blow out a "strong, steady breath[] until he was told to stop." On his first few attempts he stopped before giving a complete breath sample. [Appellant] was told "to stop playing around with the machine" and not to stop breathing before providing a full sample. He was also advised that his failure to provide a full sample would be considered a refusal and that he would face more severe penalties if he failed to provide a sample. Thereafter [Appellant] provided two complete samples and the results of testing, BAC levels of .185 and .187. are reported in Exhibit C-5.

The DataMaster DMT Owners Guide [ ] explains that an "Invalid Sample" message will appear where a reading of BAC decreases during a continuous exhalation. It explains that [t]he alcohol measurement of breath is taken from the later portion of the exhaled breath sample that approximates deep lung air and if the breath sample is exhaled continuously. This reading can be expected to rise, quickly at first, then more slowly as the concentration [of alcohol in the breath] becomes more uniform. If a reading decreases, for any reason the test is terminated and the message "Invalid Sample" is displayed. Additionally, in the Owner's Manual it is explained that during the exhalation of breath the DataMaster measures the alcohol level at a rate of four times every second, it averages every two consecutive readings and compares each average to the last average. If, in the course of the test, any three sequential averages are

determined to be decreasing when preceded by an upward reading, the sample is determined to be not as expected and the test is terminated as an "Invalid Sample." Exhibit C-5 shows the results of a completed test and there is no indication that an "Invalid Sample" message invalidates these results. [Appellant] offered no evidence that warrants a contrary conclusion.

(Trial Court Opinion, 2/10/14, at 2-5) (some quotation marks and some internal citations omitted).

On July 5, 2013, Appellant filed an omnibus pre-trial motion seeking, in part, to suppress evidence because the state troopers allegedly lacked either probable cause or reasonable suspicion to stop his motor vehicle. (*See* Omnibus Pretrial Motion, 7/05/13, at 3). Appellant also alleged that the BAC results were inadmissible because the troopers allegedly obtained invalid samples. (*See id.* at 8-12).

The trial court held a suppression hearing on August 6, 2013. At the start of the suppression hearing, Appellant orally amended his motion to include an allegation that the state troopers lacked probable cause to arrest him. (*See* N.T. Suppression Hearing, 8/06/13, at 6). Further, Appellant withdrew his claim to suppress the results of the breath test without prejudice to its later renewal via a motion *in limine*. (*See id.* at 6-7). On October 11, 2013, the trial court issued an order suppressing certain statements Appellant made to the police but otherwise denying his motion. (*See* Order, 10/11/13, at 1).

On October 22, 2013, a stipulated non-jury trial took place. As previously stated, the trial court found Appellant guilty of DUI and of driving

with a suspended license, DUI related.[3]  The trial court immediately proceeded to sentencing, and sentenced Appellant to an aggregate term of incarceration of not less than one nor more than two years.

The instant, timely appeal followed.  On November 21, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal.  *See* Pa.R.A.P. 1925.  After receiving an extension of time, Appellant filed a timely concise statement on December 26, 2013.  *See* Pa.R.A.P. 1925(b).  The trial court issued an opinion on February 10, 2014.  *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

1. Did the [trial] court err in refusing to suppress evidence obtained as a result of the Appellant's unlawful arrest for the offenses of [t]heft and/or DUI?

2. Did the [trial] court err in allowing the Commonwealth to enter into evidence the results of [a] breathalyzer test conducted on a DataMaster DMT based on invalid breath tests?

(Appellant's Brief, at 3).

On appeal, Appellant challenges the denial of his motion to suppress, arguing that the state troopers lacked probable cause to arrest him. (*See id.* at 12-17).  When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn

---

[3] 75 Pa.C.S.A. § 1543(b)(1.1)(ii).

from those findings." ***Commonwealth v. Holton***, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by Appellant. ***See id.*** If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the suppression court. ***See id.***

> [Initially, we] observe that the forcible stop of a vehicle constitutes an investigative detention such that there must be reasonable suspicion that illegal activity is occurring. Police are justified in stopping a vehicle when relying on information transmitted by a valid police bulletin. Moreover, even where the officer who performs the stop does not have reasonable suspicion, the stop is nonetheless valid if the radio officer requesting the stop has reasonable suspicion.

***Commonwealth v. Washington***, 63 A.3d 797, 802 (Pa. Super. 2013) (citation omitted).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citations

and quotation marks omitted, emphasis in original).  Further, our Supreme

Court has stated that:

> [p]robable cause is a practical, nontechnical conception:  it is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules. . . . [T]he very reason we adopted this approach, namely, the need to be mindful of the notion of probable cause as based on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Commonwealth v. Ruey*, 892 A.2d 802, 815-16 (Pa. 2006) (citations and

quotation marks omitted).

> Recognizing these principles, this Court has stated:
>
> [p]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act.  It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause.  To this point on the *quanta* of evidence necessary to establish probable cause . . . finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision.

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005),

*appeal denied*, 920 A.2d 831 (Pa. 2007) (quotation marks and citations

omitted).

Here, the record shows that, at 2:45 a.m., State Police Troopers Wiley

and Wade receive a radio dispatch that a heavyset, white male had left the

Media Diner without paying, and that the man was driving a dark-colored

Chevrolet SUV, possibly a Tahoe.  (**See** N.T. Suppression Hearing, 8/06/13,

- 7 -

at 11-13, 63-64). Dispatch informed the troopers that the SUV had left the parking lot of the Media Diner at Routes 1 and 352 and headed south towards Chester. (*See id.* at 14, 64). The troopers traveled south and positioned their vehicle, so the SUV would pass them. (*See id.* at 14-15, 64-65). When they observed the SUV, the only vehicle on the road at the time, passing at a fast rate of speed, the troopers pulled out behind it and activated their lights and sirens. (*See id.* at 15-16, 65). The SUV did not immediately pull over but continued to drive for a half a mile to one mile before pulling off the road. (*See id.* at 16, 65). Thus, because the basis for the stop was information from a valid police bulletin, the troopers had the necessary reasonable suspicion of criminal activity. *See Washington*, *supra* at 802.

When the SUV eventually stopped, the troopers, concerned for their safety because they believed Appellant was trying to flee, activated the speaker and requested that Appellant exit the vehicle. (*See* N.T. Suppression Hearing, 8/06/13, at 16, 65). Trooper Wiley ordered Appellant to turn around, face away from the patrol unit and get down on his knees, but Appellant did not comply. (*See id.* at 17, 66). Trooper Wiley then directed Appellant to get down on his stomach, however, Appellant only got down onto his knees. (*See id.*). Appellant matched the description given by the dispatcher. (*See id.*). Trooper Wade then checked to make certain there was no one else in the vehicle and requested backup. (*See id.* at 66-

67). As Trooper Wiley approached Appellant to handcuff him, he noticed a strong odor of alcohol emanating from Appellant's breath and body. (*See id.* at 18-19). Trooper Wiley also observed that Appellant's eyes were bloodshot and glassy and his speech was slow and slurred. (*See id.* at 19). Trooper Wiley handcuffed Appellant and put him in the police car to take him over to the Media Diner; Trooper Wiley noticed that the odor of alcohol continued to emanate from Appellant. (*See id.* at 19-20, 67). Trooper Wiley did not conduct any field sobriety tests because of Appellant's initial failure to pull over his SUV and because he was unsure of the severity of the theft in question, and, therefore, Trooper Wiley did not feel safe in taking Appellant out of handcuffs. (*See id.* at 22).

Initially, we note that this Court does not require the conducting of field sobriety tests in order to arrest an individual for DUI. *See Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012). Here, Appellant's car matched the description of the vehicle in the police bulletin, he was the only person traveling on the road at 2:45 a.m., he matched the description of the person who committed the theft, he failed to obey police commands promptly, smelled strongly of alcohol, had glassy and bloodshot eyes, and slurred and slow speech. This was sufficient probable cause to arrest him on suspicion of theft/DUI. *See id.* at 817-18; *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. 2008) (sufficient probable cause to arrest on suspicion of DUI, even in absence of field sobriety tests, where

defendant had slurred speech, smelled of alcohol, and had glassy eyes). Appellant's first claim lacks merit.

In his second claim, Appellant contends that the trial court erred in denying his motion *in limine* to suppress the results of an invalid breath test. (**See** Appellant's Brief, at 18-21). Specifically, Appellant argues that the first test resulted in an invalid sample. (**See id.** at 20). We disagree.

Initially, Appellant did not properly preserve this issue for appeal. As discussed above, Appellant withdrew this claim without prejudice to the filing of a motion *in limine* at the suppression hearing. (**See** N.T. Suppression Hearing, 8/06/13, at 6-7). In its February 10, 2014 opinion, the trial court stated that Appellant had raised the matter via a motion *in limine*. (**See** Trial Ct. Op., at 7). However, neither Appellant nor the trial court indicates where Appellant preserved this issue, and we have been unable to locate this motion *in limine* in our review of the record. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. **See Commonwealth v. Mulholland**, 702 A.2d 1027, 1034 n.5 (Pa. 1997) ("In a record containing thousands of pages, this court will not search every page to substantiate a party's incomplete argument"). Accordingly, we find that Appellant waived this claim. **See** Pa.R.A.P. 302(a); Pa.R.A.P. 2117(c); and Pa.R.A.P. 2119(e).

Moreover, the claim is without merit.

> A motion *in limine* is a procedure for obtaining a ruling on
> the admissibility of evidence prior to or during trial, but before

the evidence has been offered.  A trial court's decision to grant or deny a motion *in limine* is generally subject to an evidentiary abuse of discretion standard of review.

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge.  Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. . . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. . . . We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Williams*, 91 A.3d 240, 248-49 (Pa. Super. 2014) (*en banc*) (quotation marks, indentations, and citations omitted).

Here, Appellant fails to point to any evidence of record demonstrating that the machine recorded an "invalid sample."  (Appellant's Brief, at 18-21).

- 11 -

Rather, as the trial court found, the record reflects that, "[t]he Datamaster DMT that was used was properly certified as accurate in accordance with applicable Department of Health and Department of Transportation regulations and was tested and certified as falling within the acceptable range for calibration. The sample solution used was also analyzed and certified accurate." (Trial Ct. Op., at 3; *see also id.* at 8; N.T. Suppression Hearing, 8/06/13, at 69-76, 112). The record further demonstrates that Appellant, who was trying to fool the machine by holding his breath and not following the instructions given by Trooper Wade, caused the problems with the initial tests. (*See* N.T. Suppression Hearing, 8/06/13, at 25-26, 80-81). When Trooper Wiley told Appellant to stop playing around or Appellant would face more severe penalties, Appellant complied with the instructions and Trooper Wade was able to obtain two complete breath samples. (*See id.*). Thus, Appellant's claim that the trial court should have granted his motion *in limine* because of invalid samples on the breath tests lacks merit.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/6/2014</u>