J-S66030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JODY GORDON, JR., | : | |
| | : | |
| Appellant | : | No. 12 MDA 2014 |

Appeal from the Judgment of Sentence Entered November 1, 2013,
In the Court of Common Pleas of York County,
Criminal Division, at No. CP-67-CR-0001636-2012.

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                 **FILED DECEMBER 04, 2014**

Appellant, Jody Gordon, Jr., appeals from the judgment of sentence entered following his convictions of four counts of delivery of cocaine, one count of possession of cocaine with intent to deliver, and two counts of criminal conspiracy.  For the reasons that follow, we affirm.

The facts adduced at trial are as follows:

On February 15, 2011, Trooper Shawn Wolfe of the Pennsylvania State Police and the York County Drug Task Force and other law enforcement officers were conducting an undercover drug investigation using a confidential informant ("CI") to assist in the purchase of illegal drugs.  The CI informed Trooper Wolfe that he could purchase crack cocaine from a black male known as "Jo."  N.T. Trial, 7/8/13, at 134–135.  Trooper Wolfe observed the CI place a telephone call and overheard a conversation

between the CI and the recipient of the call arranging for a drug transaction to occur at the intersection of East Clark Alley and Mary Smith Lane in York, Pennsylvania. *Id.* at 135.

The CI was searched and provided with one hundred dollars in official funds to purchase crack cocaine. N.T. Trial, 7/8/13, at 136–137. Undercover Officer Russell Schauer of the York County Drug Task Force was designated to ride along with the informant and monitor both the CI and the drug transaction. *Id*. at 136, 205. Trooper Wolfe and York City Detective Scott Nadzom conducted surveillance around the area of the intended meeting and Pennsylvania State Trooper Douglas Rost was assigned to a roving duty, specifically to observe the arranged–buy location and to watch for the suspect vehicle, a silver Mitsubishi. *Id*. at 136; N.T. Trial, 7/9/13, at 346–347. Trooper Wolfe witnessed a silver Mitsubishi arrive at the surveillance point and radioed Officer Schauer to proceed to the meeting location with the CI. Once they arrived, Trooper Wolfe saw a black male driver exit the Mitsubishi. N.T. Trial, 7/8/13, at 138. At this point, Detective Nadzom assumed the surveillance. He observed a black male approach the driver's side of the CI's vehicle on footstep and, after a short amount of time, return to the Mitsubishi. N.T. Trial, 7/10/13, at 432–433.

Officer Schauer testified that he was a passenger in the CI's vehicle and saw a black male approach the driver's side window. N.T. Trial, 7/8/13,

at 207. He watched the CI and the black male exchange the controlled-buy funds for two small baggies that, based upon the officer's training and experience, appeared to contain cocaine. N.T. Trial, 7/8/13, at 207–208.

When the officers and CI returned to the police station, the purchased drugs field-tested positive for cocaine. N.T. Trial, 7/8/13, at 139–140. The substance was later sent to the Pennsylvania State Crime Lab for chemical analysis. *Id*. Nicole Blascovich, a forensic scientist employed at the crime lab, was qualified as an expert in drug analysis and testified that the substance in question contained cocaine with a weight of .50 grams. N.T. Trial, 7/10/13, at 484, 494–495.

On March 15, 2011, Trooper Wolfe met with the same CI used in the February 15, 2011, transaction. N.T. Trial, 7/8/13, at 140–141. The CI again telephoned "Jo" and Trooper Wolfe heard him order another quantity of cocaine. *Id*. A meeting between the CI and "Jo" was arranged for the same location, and the CI was given official funds to purchase narcotics. *Id*. Officer Schauer accompanied the CI to the meeting point, and other officers set up surveillance around the area of the intended transaction. *Id*. at 142, 210. From his vantage point, Trooper Wolfe observed "Jo" and a woman walk from the front porch of a duplex towards the silver Mitsubishi that "Jo" had driven to the February drug transaction. "Jo" tossed the woman a set of keys and proceeded to walk to the pre-arranged meeting place. *Id*. at 142–

143. "Jo" approached the driver's side window of the informant's car where he and the CI exchanged the controlled-buy money for a baggie containing suspected crack cocaine. *Id*. at 211. The purchased drugs field-tested positive for cocaine, *id.* at 144, and, after analysis at the Pennsylvania State Crime Lab, the substance in question was identified as cocaine with a weight of .77 grams. N.T. Trial, 7/10/2013, at 500.

On July 21, 2011, Trooper Wolfe met with an informant different from the one involved in the February 15 and March 15, 2011 transactions ("CI2"). N.T. Trial, 7/8/13, at 144. CI2 informed Trooper Wolfe that he could purchase crack cocaine from a black male who lived in the City of York. In Trooper Wolfe's presence, CI2 placed a telephone call and arranged for a drug transaction to occur in the area around the intersection of Albemarle Street and Wayne Avenue in the City of York. *Id*. at 146. Trooper Wolfe provided CI2 with $100 in official funds to fund the drug purchase and followed him to the intended transaction site. *Id*. at 146. There, the trooper observed a silver Mitsubishi arrive at the meeting location, whereupon "Jo" exited the vehicle and approached CI2's vehicle. *Id*. at 147–148. York City Police Detective Barton Seelig, a member of the July 21, 2011 surveillance team, witnessed "Jo" walk to the driver's side window of CI2's vehicle and extend his hand into the car. N.T. Trial, 7/10/13, at 472. CI2 then returned to Trooper Wolfe and handed over the

substance he purchased from "Jo." The substance was field-tested and dispatched to the Pennsylvania State Crime Lab for chemical analysis. N.T. Trial, 7/8/13, at 148. The parties stipulated that the substance in question was cocaine with a weight of .24 grams. N.T. Trial, 7/10/13, at 510, 514.

An almost identical transaction occurred four days later, on July 25, 2011. Trooper Wolfe again met with CI2 to arrange another narcotics purchase from "Jo." Through a telephone call, CI2 ordered a quantity of crack cocaine and arranged to meet "Jo" in the same vicinity where the July 21, 2011 transaction occurred. N.T. Trial, 7/8/13, at 148–149. Trooper Wolfe witnessed the silver Mitsubishi arrive at the meeting place and saw "Jo" walk up to CI2's vehicle and conduct a hand-to-hand transaction. *Id.* at 150. The substance purchased tested presumptively for cocaine, and the parties stipulated that the substance in question was cocaine with a weight of .42 grams. *Id*. at 151; N.T. Trial, 7/10/13, at 512.

On July 26, 2011, Trooper Wolfe secured a warrant to search "Jo's" residence at 1009 Hay Street in the City of York. N.T. Pretrial Hearing, 7/23/12, at 22; N.T. Trial 7/8/13, at 151. As Trooper Wolfe and other officers were preparing to execute the warrant, Detective Nadzom, who was conducting surveillance in the area of the residence, radioed that "Jo" had arrived at the address and had gone inside. N.T. Trial, 7/10/13, at 443. A few minutes later, "Jo" exited 1009 Hay Street and entered the silver

Mitsubishi. "Jo" began to drive away, but the police blocked the car from leaving. *Id*. at 445. When "Jo" then attempted to flee on foot, Trooper Wolfe was able to apprehend him. N.T. Trial, 7/8/13, at 154–155.

After "Jo" was taken into custody, Trooper Wolfe searched his person and found a set of keys to the house at 1009 Hay Street, a bag of marijuana, a bag of crack cocaine, an Access card bearing the name of "Jo's" girlfriend, Etiene Haas, and $800 in cash. N.T. Trial, 7/8/13, at 244–245. The parties stipulated that the substances found were cocaine with a weight of .73 grams and marijuana with a weight of 1.2 grams. N.T. Trial, 7/10/13, at 513. Trooper Wolfe and other officers next escorted "Jo" into the residence where they encountered Ms. Haas and her two children. Trooper Wolfe read the search warrant to "Jo" and Ms. Haas and verbally gave both the standard **Miranda**[1] warnings. N.T. Trial, 7/8/13/, at 154-55. "Jo" acknowledged that 1009 Hay Street was his residence but claimed that he did not have anything illegal in the house. *Id*. at 156.

The officers conducting the search of the residence uncovered the following non-exhaustive list of items: two separate bundles of cash in a men's shirt in a bedroom closet that included two fifty-dollar bills from the official funds used in the monitored drug transactions, and two live ammunition rounds in a tub in that same bedroom; a bag of colorless

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

baggies hanging on the rear kitchen door, a box of .45 caliber ammunition and a .45 caliber gun box in a kitchen closet; three cellular telephones; two bags of suspected cocaine on a plate with suspected cocaine residue; a digital scale with suspected cocaine residue; and an empty box of sandwich baggies with a razor blade, and two bags of suspected cocaine[2] in a kitchen cabinet; and, in the living room, a bag of suspected marijuana roaches, cellular telephones, and a Ziploc bag inscribed with the words "Stay High." N.T. Trial, 7/9/13/, at 282–283; 380–384; N.T. Trial, 7/10/13/, at 446–447. A subsequent search of the silver Mitsubishi that same date uncovered a loaded nine millimeter handgun from under the driver's seat. *Id*. at 376–377.

On November 22, 2011, Trooper Wolfe filed a criminal complaint charging Appellant, *inter alia*, with four counts of delivery of cocaine, one count of possession of cocaine with intent to deliver, and two counts of criminal conspiracy. On June 11, 2012, Appellant filed a pretrial motion to suppress evidence and a petition for *habeas corpus* to dismiss the charges. A hearing on Appellant's motion was held on July 23, 2012. Trooper Wolfe testified to the details of the monitored drug transactions and described Appellant's arrest and the search of his residence and person. At the

---

[2]  The parties stipulated that those bags contained cocaine that weighed 6.4 grams.  N.T. Trial, 7/10/13/, at 514.

conclusion of the hearing, the trial court denied both the motion to suppress and the *habeas corpus* request.

Appellant's jury trial commenced on July 8, 2013. The Commonwealth presented evidence from the officers participating in the controlled narcotics buys on February 15, 2011, March 15, 2011, July 21, 2011, and July 25, 2011, and Appellant's eventual arrest and execution of the search warrants on July 26, 2011. Expert testimony and party stipulations established that the substances involved in the controlled transactions and uncovered during the searches of Appellant and 1009 Hay Street were cocaine and marijuana. N.T. Trial, 7/10/13, at 494–521. Additionally, Corporal Kenneth Hassinger of the Pennsylvania State Police was accepted as an expert concerning packaging of narcotics and drug sales; he opined that whoever possessed the cocaine located inside 1009 Hay Street did so with the intent to distribute it to other individuals. *Id*. at 554, 590–591. Finally, during the course of the trial, Trooper Wolfe, Officer Schauer, Officer Rost, Trooper Keppel, Detective Nadzom, and Detective Seelig identified Appellant as the man known as "Jo" involved in the drug transactions. N.T. Trial 7/8/13, at 138, 208; N.T. Trial 7/9/13, at 350, 373; N.T. Trial, 7/10/13/, at 467, 473.

On July 11, 2013, the jury found Appellant guilty of the above-referenced charges. Prior to sentencing, trial counsel, Ronald Gross, Esquire, was permitted to withdraw as counsel, and Thomas Gregory,

Esquire, was appointed Appellant's counsel. Appellant was sentenced on November 1, 2013 to a term of imprisonment of five to ten years. Attorney Gregory filed a post-sentence motion on Appellant's behalf, which included a challenge to the weight of the evidence, that the trial court denied after a hearing on December 19, 2013.

Appellant filed a timely notice of appeal on December 27, 2013. Three days later, on December 30, 2013, Attorney Gregory withdrew as counsel, and George Margetas, Esquire, was appointed to represent Appellant. The next day, the trial court's Pa.R.A.P 1925(b) direction to file a statement of errors complained of on appeal was filed; unfortunately, a copy of said order was served on prior counsel, Attorney Gregory, and not on current counsel, Attorney Margetas.

What followed was a slew of procedural missteps and miscommunications. On February 4, 2014, the Middle District Filing Office of this Court directed Attorney Gregory to file the docketing statement associated with this appeal by February 14, 2014. On that date, Attorney Gregory filed a motion for extension of time to file the statement, explaining that he no longer represented Appellant, and that although he provided Attorney Margetas with Appellant's file, he had been unable to contact him. Attorney Gregory requested an extension of twenty days to file the docketing statement and to confer with Attorney Margetas.

On February 20, 2014, a panel of this Court granted the motion for extension of time and directed Attorney Margetas to either enter his appearance or apprise the Court of Appellant's representation status within seven days. When Attorney Margetas failed to respond to this directive, on March 7, 2014, this Court entered an order remanding the appeal for thirty days to determine whether counsel abandoned Appellant. We directed additionally that the trial court should notify the appellate court, in writing, of all findings and actions taken in this matter. When this remand order went unheeded, on April 24, 2014, we again ordered the trial court to determine if counsel had abandoned Appellant and to notify us of its findings. Remarkably, the trial court remained silent. Accordingly, on May 29, 2014, citing the trial court's inactivity, this Court remanded the record and ordered the trial court, for the third time, to ascertain the status of the case and notify the Court of same.

On June 9, 2014, the trial court finally responded to this Court's multiple directives and, on June 12, 2014, we ordered Attorney Margetas to enter his appearance.[3] Attorney Margetas complied, albeit untimely. While this description of the attorneys' and trial court's inattention to this Court's orders invokes consideration of dismissal of the appeal, the unexpected fact

---

[3] The trial court's June 9, 2014 order, to which this Court refers to in its June 12, 2014 order, does not appear in either the official trial court record nor is it noted in the appellate docket entries.

is that Attorney Margetas had actually filed a Pa.R.A.P. 1925(b) statement and the trial court filed its Rule 1925(a) opinion on May 7, 2014, addressing the issues raised by Appellant.

We, nonetheless, address the late filing of the Rule 1925(b) statement. As noted previously, the trial court ordered the statement's filing within twenty-one days of December 31, 2013, or by January 21, 2014, but it was not filed until March 14, 2014. Appellants must comply when the trial court orders the filing of a 1925(b) statement. **Commonwealth v. Thompson**, 39 A.3d 335, 338 (Pa. Super. 2012). However, when counsel has filed an untimely Rule 1925(b) statement and, as here, the trial court has addressed those issues, we need not remand and may address the merits of the issues. **Id.** at 340. An additional consideration favoring the propriety of our review is that the trial court served Appellant's prior counsel, rather than his current counsel, with its Rule 1925(b) order. We, thus, turn to the merits of the appeal.

Appellant presents three issues for review:

[I]. Whether the trial court erred by failing to grant Appellant's suppression motion?

[II]. Whether the trial court erred by not granting Appellant's motion that the verdict was against the weight of the evidence?

[III]. Whether the trial court erred by not granting the Appellant's Petition for Writ of Habeas Corpus?

Appellant's Brief at 4. We will discuss the issues chronologically, rather than in the order proposed by Appellant, beginning with whether the trial court abused its discretion in denying Appellant's writ of *habeas corpus*. **See Commonwealth v. Young**, 904 A.2d 947, 954 (Pa. Super. 2006) (decision to grant or deny petition for writ of *habeas corpus* will be reversed on appeal only for manifest abuse of discretion).

Appellant contends that the evidence presented at the preliminary hearing concerning his participation in the subject drug deals was deficient because it was supported only by biased and uncorroborated police testimony. "At a preliminary hearing, the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." **Commonwealth v. Weigle**, 997 A.2d 306, 311 (Pa. 2010) (quoting **Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991)). A criminal defendant seeking to challenge the sufficiency of the evidence presented at his preliminary hearing may do so by filing a writ of *habeas corpus.* **Commonwealth v. Landis**, 48 A.3d 432, 444 (Pa. Super. 2012) (citation omitted).

In his written pretrial motion, Appellant presented his request for *habeas corpus* relief in the context of an argument that the criminal charges should be dismissed because the Commonwealth failed to comply with

Pa.R.Crim.P. 544. Under Rule 544(A), "[w]hen charges are dismissed or withdrawn at, or prior to, a preliminary hearing, . . . the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges." Appellant's written motion advocated application of this rule because, after the charges were initially dismissed by a magisterial district judge, the police re-filed the charges without written authorization from the assistant district attorney attached to the case.

When the merits of the motion were argued, the Commonwealth represented that Trooper Wolfe would testify that he was authorized to refile the charges. The Commonwealth admitted to a technical violation of Rule 544(A), but disputed that dismissal of the case was the proper remedy. The Commonwealth suggested that, rather than remanding the matter to the magisterial district judge, the trial court could conduct the preliminary hearing. N.T. Pretrial Hearing, 7/23/12, at 6. Although Appellant re-asserted his argument that Rule 544 had been violated and the appropriate remedy was a remand, he agreed with the Commonwealth that the trial court could proceed with the preliminary hearing at that time. *Id*. at 8. The trial court then denied the motion for dismissal, consolidated the *habeas corpus* motion with the motion to suppress, and proceeded with the hearing. *Id.* at 9.

Trooper Wolfe was the sole witness presented by the Commonwealth at the hearing. The officer testified to his participation in the four controlled-buy transactions involving Appellant and to the facts surrounding Appellant's arrest and search. He also detailed the circumstances surrounding the execution of the search warrant of 1009 Hay Street. At the conclusion of the testimony, Appellant's counsel issued the following statement: "Your Honor, taking this as a [*habeas corpus*], I believe from what was presented, there would be enough to satisfy the burden to have us go forward." N.T. Pretrial Hearing, 7/23/12, at 41. When the trial court questioned whether counsel was acknowledging the relatively low threshold of evidence required to proceed with the criminal case, counsel replied: "I'm not going to insult your intelligence and say there is no evidence." *Id*. at 42. Citing counsel's concession that sufficient evidence supported a *prima facie* case against Appellant, the trial court dismissed the motion for *habeas corpus*. *Id*. at 48–49. In its Rule 1925(a) opinion, the trial court offered an additional rationale for denying the motion that the jury's guilty verdict on all charges mooted his claim of improper denial of his *habeas corpus* motion. Trial Court Opinion, 5/7/14, at 4.

Although Appellant now challenges the quantum and reliability of Trooper Wolfe's testimony to establish a *prima facie* case that he committed the subject crimes, Appellant's prior concession at the hearing confirming

the sufficiency of the Commonwealth's evidence forecloses any argument that the trial court's denial of Appellant's *habeas corpus* motion was an abuse of discretion.[4]

Appellant next argues that the trial court improperly denied his motion to suppress the evidence obtained from the search of his person. Appellant claims that the search warrant permitted a search of only those persons found on the subject premises and, because he had already left the Hay Street residence when the police officers arrived to execute the warrant, the search of his person was beyond the legal purview of the warrant.

Our standard of review for the denial of a motion to suppress is as follows:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate . . . . Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

---

[4]    Additionally, Appellant should have sought permission to take an immediate appeal pursuant to 42 Pa.C.S. § 702(b) to properly contest the denial of his request for *habeas corpus* relief. **Commonwealth v. Bibbs**, 970 A.2d 440, 452 (Pa. Super. 2009).

*Commonwealth v. Kemp*, 961 A.2d 1247, 1252-1253 (Pa. Super. 2008) (*en banc*) (citations and internal quotations omitted).

At the pretrial hearing, Appellant admitted that the search warrant issued for the 1009 Hay Street residence permitted a search of persons present on the property, but argued that because he had left the premises the police had no legal grounds to search him. Trooper Wolfe, however, explained that Appellant was searched incident to his arrest for the previously-observed narcotics felonies:

> A. He had three previous controlled deliveries, felonies, and he was taken into custody based upon those deliveries from February 15, from March 15, and I believe it was July 21 and July 25, all of 2011.
>
> Q. He was searched incident to arrest then?
>
> A. Yes, sir, he was.
>
> Q. He was driving away from the residence when you arrived to execute the warrant?
>
> A. Yes. He was pulling away from the residence.

N.T. Pretrial Hearing, 7/23/12, at 25.

The trial court concluded that the search of Appellant was incident to his arrest and denied the suppression motion. N.T. Pretrial Hearing, 7/23/12, at 49. The trial court reiterated its rationale for denying the motion in its Rule 1925 opinion: "The Court stands by its original ruling and reasons placed on the record at the [pretrial motion hearing]. The Court

concludes that the search of Defendant was a proper search incident to arrest." Trial Court Opinion, 5/7/14/, at 3 (record citation omitted).

On appeal, Appellant reasserts his argument that search of his person was not permissible under the warrant authorizing a search of 1009 Hay Street. Citing **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1996), Appellant further offers that a warrantless search of his person was illegal because the police did not have probable cause to believe that a crime was being committed or about to be committed nor did they have a reasonable belief that criminal activity was afoot. **Id**. at 228 (articulating constitutionally permissible grounds for warrantless seizures of person) (citations omitted). Appellant urges that the police were present to search the premises only and the alleged earlier drug transactions were referenced only in support of the warrant and did not constitute sufficient grounds to detain him. Appellant's Brief at 10–11.

Both of Appellant's arguments fail. First, we have previously held that police executing a valid search warrant have the authority to detain persons who are on the premises, or who have recently exited and are outside of the premises. **Commonwealth v. Martinez**, 649 A.2d 143, 147 (Pa. Super. 1994) (citations omitted); **see also Commonwealth v. Reicherter**, 463 A.2d 1183, 1185 (Pa. Super. 1983) (relying upon **Michigan v. Summers**, 452 U.S. 692 (1982), to conclude that detention and frisk warranted when

appellant was few blocks from residence when stopped). Here, Appellant was observed exiting the premises and entering a vehicle outside the residence when the officers executing the warrant blocked his passage. Under ***Martinez***, the officers were justified in detaining Appellant when he was seen leaving the premises to be searched and was stopped at such a short distance from the residence, particularly given that he was named in the search warrant as a person to be searched.

Additionally, the trial court correctly concluded that the search was permissible as incident to an arrest. An officer's right to conduct a full custodial search of a suspect is dependent upon the lawful arrest of the suspect. ***Commonwealth v. Thompson***, 778 A.2d 1215, 1221 (Pa. Super. 2001). To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person arrested. ***Commonwealth v. Holton***, 906 A.2d 1246, 1249 (Pa. Super. 2006). Whether probable cause exists is a "fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training." ***Commonwealth v. Wells***, 916 A.2d 1192, 1195 (Pa. Super. 2007) (citing ***Commonwealth v. Clark***, 735 A.2d 1248, 1252 (Pa. 1999)) (internal quotations and citations omitted).

The evidence presented by Trooper Wolfe at the pretrial hearing demonstrated that he was instrumental in conducting the four controlled-buy transactions involving Appellant, and he actually witnessed the two hand-to-hand July 2012 transactions. N.T. Pretrial Hearing, 7/23/12, at 28. Additionally, he was the affiant on the application for the search warrant of Appellant's residence that detailed the six-month investigation of Appellant. When Appellant attempted to flee the scene on foot, he was apprehended and placed under arrest. Considering Trooper Wolfe's knowledge of Appellant's prior suspected criminal behavior, the record supports the trial court's implied finding that the evidence established probable cause to arrest Appellant, and its resulting legal conclusion that Appellant was searched incident to this legal arrest. "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." ***Holton,*** 906 A.2d at 1250 (citing ***Commonwealth v. Dommel****,* 885 A.2d 998, 1002 (Pa. Super. 2005)).

Appellant's final argument is that the verdict was against the weight of the evidence. Appellant's weight claim is based on the allegation that the testimonies of the police witnesses were inconsistent with one another and were inherently biased. Appellant takes particular issue with the supposed

conflict in the evidence concerning the gun that was eventually discovered in the silver Mitsubishi.[5]  Appellant's Brief at 12.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses."  **Commonwealth v. Johnson**, 668 A.2d 97, 101 (Pa. 1995).  An appellate court cannot substitute its judgment for that of the finder of fact.  **Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 1253) (quoting **Commonwealth v. Champney**, 832 A.2d 403, 409 (Pa. 2003)).  Thus, we may reverse the trial court's verdict only if it is so contrary to the evidence as to shock one's sense of justice.  **Commonwealth v. Boyd**, 73 A.3d 1269, 1274 (Pa. Super. 2013) (quoting **Commonwealth v. Cruz**, 919 A.2d 279, 281–282 (Pa. Super. 2007)).  Additionally, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the claim."  **Commonwealth v. Tharp**, 830 A.2d 519, 528 (Pa. 2003) (citations omitted); **see also Commonwealth v. Clay**, 64 A.3d 1049, 1055

---

[5]    In his brief, Appellant alleges for the first time that the verdict was against the weight of the evidence because another person was listed as a resident of 1009 Hay Street.  Appellant fails to develop this argument, and, in any event, it is a question implicating a challenge to the sufficiency, not the weight, of the evidence.

(Pa. 2013) (appellate consideration of weight claim is review of trial court's exercise of discretion, not of underlying question of whether verdict is against weight of evidence).

The trial judge presiding over Appellant's jury trial stated that the verdict did not shock his sense of justice:

> The Defendant avers that no credible evidence exists because the officers testified inconsistently regarding what occurred during the commission of the Defendant's numerous offenses. The Defendant made this argument during a hearing on Defendant's Post-Sentence Motion on December 19, 2013. The Jury in this case found the testimony of the officers involved to be credible. Numerous officers testified for the Commonwealth regarding a number of instances involving the Defendant and the offenses charged. Any proposed inconsistencies were an issue of credibility and were for the Jury to decide. The Jury was free to believe all, part[,] or none of the testimony of each officer that testified during trial. See [*Commonwealth v.*] *Champney,* [832 A.2d 403 (Pa. 2003)]. The Jury's decision to believe all or part of the testimony of these Commonwealth witnesses does not shock the Court's sense of justice. As such, the Court concludes that the Jury's verdict does not go against the weight of the evidence presented at trial.

Trial Court Opinion, 5/7/14, at 3 (record citation omitted).

Upon our review of the record, we find no reason to upset the trial judge's conclusion. There is "no evidence of bias, prejudice, partiality, ill-will, manifest unreasonableness, or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521–522 (Pa. Super. 2007). Moreover, the jury was free to make credibility determinations and accept or reject the police officers' testimonies as it chose. ***See Commonwealth v.***

***Davido***, 868 A.2d 431, 442 n.18 (Pa. 2005) (observing that questions of inconsistent testimony and improper motive are credibility determinations within province of factfinder). In light of the evidence discussed and our circumscribed review, the trial court did not abuse its discretion by determining the guilty verdict did not shock one's conscience. Therefore, Appellant's weight claim fails.

As we conclude that Appellant's issues on appeal do not merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2014