J-S76039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARVIN THOMAS, | |
| Appellant | No. 2079 EDA 2017 |

Appeal from the Judgment of Sentence May 17, 2017
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0000844-2013

BEFORE:  PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 18, 2018**

Appellant, Marvin Thomas, appeals from the judgment of sentence entered on May 17, 2017, following his non-jury conviction of one count each of persons not to possess firearms and firearms not to be carried without a license,[1] and two counts each of possession with intent to deliver (PWID), possession of a controlled substance, and possession of drug paraphernalia.[2] On appeal, Appellant challenges the trial court's denial of his motion to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

[2] 35 P.S. § 780-113(a)(30), (16) and (32), respectively.

suppress. For the reasons discussed below, we affirm in part and vacate in part.[3]

We take the underlying facts and procedural history in this matter from the trial court's February 17, 2017 memorandum, the notes of testimony of the July 2, 2013 suppression hearing, this Court's November 23, 2016 opinion on Appellant's first direct appeal, and our independent review of the certified record.

On January 9, 2013, at approximately two p.m., Chester City Police Department Detective Calvin Butcher, a twenty-year veteran with extensive narcotics experience, was with a group of officers who had been dispatched to the 1400 block of Congress Street in Chester. (*See* N.T. Suppression Hearing, 7/02/13, at 24-30). The area was a high-crime area, known for drug dealing and shootings; within the prior two weeks there had been two homicides and multiple shootings within two to four blocks of this area. (*See id.* at 25-26). The group was directed to break up large groups of loitering individuals, obtain identifications, issue citations, and, if necessary, make arrests. (*See id.*).

---

[3] Although we affirm in part, our reasoning is different from that of the trial court. *See Commonwealth v. Harper*, 611 A.2d 1211, 1213 n.1 (Pa. Super. 1992) ("It is well-settled that an appellate court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action. This is so even if we rely upon a different basis in our decision to affirm.") (citations omitted).

The group of police arrived in full uniform in a marked police vehicle; Detective Butcher immediately saw a group of men congregating on the sidewalk in front of several apartment buildings. (*See id.* at 30). As the police cars came to the area, the men scattered in various directions. (*See id.* at 32-33). Detective Butcher noticed one man, later identified as Appellant, who was carrying a backpack, because he moved away quickly while nervously gazing behind him in the direction of the police and their parked cars. (*See id.* at 33-34). Detective Butcher directed Chester City Police Officer George Gizzi to obtain identification from Appellant. (*See id.* at 35). Detective Butcher did not witness Appellant engage in any criminal activity. (*See id.* at 38).

Officer Gizzi, a veteran police officer, with training in the detection of the scent of fresh and burnt marijuana, approached Appellant, who was about to enter his vehicle, and asked him for identification. Appellant said he did not have any. (*See id.* at 44-46, 51-52). Officer Gizzi did not stop Appellant from attempting to enter his car, did not draw his weapon, did not tell Appellant that he was under arrest, and did not tell Appellant that he was not free to leave. (*See id.* at 51-52). From a distance of approximately two feet from Appellant, Officer Gizzi detected the smell of marijuana emanating from him. (*See id.* at 52). He observed Appellant fumbling with his backpack, putting it on the roof of the car, and trying to push it away. (*See id.* at 54). Officer Gizzi told Appellant that his actions were making him nervous and that

he was going to pat him down for weapons. (*See id.*). He did not find any. (*See id.*). He then realized that the backpack also smelled strongly of marijuana. (*See id.*). He pulled it open and saw marijuana on top, in plain sight. (*See id.* at 54-55). Officer Gizzi was concerned that there might be a weapon in the bag, he looked further into it and found more marijuana, nineteen bags of suspected cocaine, a used pill bottle, and eleven other bags hidden in a candy box. (*See id.* at 55-56). He arrested Appellant and conducted what he termed as an "inventory" of his car. (*See id.* at 56-57). He found a black handgun in the glove box. (*See id.* at 57-58).

The police took Appellant back to the station. (*See id.* at 59). During booking, the police recovered another thirty bags of cocaine from Appellant's person. (*See id.* at 60).

On March 6, 2013, the Commonwealth filed a criminal information. On April 9, 2013, Appellant filed a motion to suppress. A hearing on Appellant's motion to suppress took place on July 2, 2013. The trial court did not issue any written orders with respect to the motion. A bench trial took place on stipulated facts on November 19, 2013. The trial court found Appellant guilty of the aforementioned charges and found that the crimes occurred in a school zone and that the gun was in close proximity to the drugs.

On March 19, 2014, immediately prior to sentencing, the parties reached an agreement regarding Appellant's sentence, which they placed on the record. In exchange for Appellant waiving his appellate and Post-Conviction

Relief Act rights, the Commonwealth agreed to a sentence of incarceration of not less than eight and one-half nor more than twenty years. The trial court sentenced Appellant in accordance with the terms of the agreement.

On March 28, 2014, Appellant filed a *pro se* motion for reconsideration of sentence and change of appointed counsel, which was denied by operation of law. On February 27, 2015, Appellant filed *pro se* motions to correct the sentence sheet *nunc pro tunc* and for appointment of counsel. The motions asserted a violation of **Alleyne v. United States**, 133 S. Ct. 2151 (2013). After the motions were denied by operation of law, Appellant filed a notice of appeal.

On November 23, 2016, this Court vacated the judgment of sentence because the trial court sentenced Appellant to an unconstitutional mandatory minimum sentence and remanded the matter for resentencing. (**See Commonwealth v. Thomas**, No. 668 EDA 2016, unpublished memorandum at 6-7 (Pa. Super. filed Nov. 23, 2016)). Importantly, this Court held it could not address Appellant's claim concerning the trial court's denial of his motion to suppress because the record contained neither an order denying the motion nor any findings of fact or conclusions of law with respect to the motion. (**See id.** at 10-11). We directed that, on remand, the trial court should enter such findings of fact and conclusions of law prior to resentencing. (**See id.**).

On remand, the trial court complied with our directives with respect to the suppression motion and resentenced Appellant to an aggregate term of

incarceration of not less than eight nor more than twenty years. The instant, timely appeal followed. On July 11, 2017, the trial court directed Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On July 28, 2017, Appellant timely filed a Rule 1925(b) statement. *See id.* On August 17, 2017, the trial court filed an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following issue for our review:

> Whether the [trial] court erred when it refused to suppress the fruits of the illegal stop and searches at issue herein, which police conducted without legal justification, and in violation of the rights guaranteed to Appellant by the Fourth and Fourteenth Amendments of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution?

(Appellant's Brief, at 6).

On appeal, Appellant challenges the denial of his motion to suppress. (*See id.* at 16-40). When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by Appellant. *See id.* If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the suppression court. *See id.*

Appellant first contends that he was subjected to an illegal investigative detention when Officer Gizzi approached him and asked him for identification. (***See*** Appellant's Brief, at 17, 25). We disagree.

Initially, we note that this Court has held that there are three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. ***See Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa. Super. 2005). Thus, we have stated:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

***Id.*** (citation omitted).

> In determining whether an interaction should be considered a mere encounter or an investigative detention, the focus of our inquiry is on whether a seizure of the person has occurred. Within this context, our courts employ the following objective standard to discern whether a person has been seized: [w]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave. Thus, a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

*Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa. Super. 2010), *appeal denied*, 13 A.3d 474 (Pa. 2010) (citations, quotation marks, and ellipses omitted). We look to the following factors in determining whether there was a seizure: "the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked." *Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*).

Here, Officer Gizzi was part of a task force attempting to disburse large gatherings and obtain identifications in a high-crime area notable for drugs and shootings. (*See* N.T. Suppression Hearing, at 24-30). A fellow officer asked him to get an identification from a man, carrying a backpack, who fled at the sight of the police and kept looking back toward them. (*See id.* at 33-34). Officer Gizzi approached Appellant on foot as Appellant was beginning to unlock his car. (*See id.* at 51-52). Officer Gizzi did not try to stop Appellant from entering his vehicle but merely asked him for identification. (*See id.* at 51-53). Appellant did not have any. (*See id.*). At no time did he tell Appellant that he was not free to leave, he did not make any physical moves to prevent Appellant from leaving, did not threaten or command him, and did not draw his weapon. (*See id.*). At the distance of about two feet from

Appellant, he smelled marijuana emanating from him, at which point he detained him. (*See id.*).

Based upon our review of the record, we hold that Officer Gizzi's initial meeting with Appellant was a "mere encounter." Here, Officer Gizzi did not attempt to stop him from entering his vehicle but merely asked him for identification. This is an encounter. *See Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012), *appeal denied*, 50 A.3d 124 (Pa. 2012) (noting that initial encounter where officer asked to talk to appellant was mere encounter); *see also Commonwealth v. Blair*, 860 A.2d 567, 573 (Pa. Super. 2004) (stating that initial interaction was "mere encounter" when officer, responding to report of domestic dispute and aware that domestic disputes are volatile, approached vehicle parked directly in front of address in question and spoke to occupants).

There is no evidence that Officer Gizzi blocked or restricted Appellant's movement. *See Downey*, *supra* at 405. Indeed, Appellant continued to attempt to unlock his vehicle while Officer Gizzi spoke to him. *See Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005) (stating that "[a] mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.") (citation omitted). The fact that Officer Gizzi requested identification from Appellant, without any other action, does not demonstrate

that the encounter escalated into an investigative detention.  ***See***

***Commonwealth v. Au***, 42 A.3d 1002, 1009 (Pa. 2012) (holding that officer's

request for identification after approaching parked vehicle did not, by itself,

transform encounter into investigatory detention where officer did not

"activate the emergency lights on his vehicle; position his vehicle so as to

block the car that [a]ppellee was seated in from exiting the parking lot;

brandish his weapon; make an intimidating movement or overwhelming show

of force; make a threat or a command; or speak in an authoritative tone.")

(citations omitted); ***see also Commonwealth v. Lyles***, 97 A.3d 298, 303

(Pa. 2014) (noting that "a seizure does not occur where officers merely

approach a person in public and question the individual or request to see

identification.") (citations omitted).  Thus, we conclude that Officer Gizzi's

initial interaction with Appellant was a mere encounter and did not constitute

a seizure.  ***See Lyles***, ***supra*** at 303; ***Au***, ***supra*** at 1008-09.

Appellant next argues that the police lacked reasonable suspicion and/or

probable cause to justify the pat-down search of his person and the search of

his backpack.  (***See*** Appellant's Brief, at 26-32). Again, we disagree.

We again note that the initial meeting between Appellant and Officer

Gizzi was a mere encounter.  However, once Officer Gizzi smelled marijuana

on Appellant, and told him he was going to search his person, we find that the

police subjected Appellant to an investigative detention.[4] This Court has stated: ". . . an 'investigative detention' . . . carries an official compulsion to stop and respond . . . . Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity." *Commonwealth v. Mackey*, --- A.3d ---, 2017 WL 6506599, at *3 (Pa. Super. filed Dec. 20, 2017) (citation omitted). We have defined reasonable suspicion thusly:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

_____

[4] Our Supreme Court has stated "[t]he key difference between an investigative and a custodial [detention] is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Pakacki*, 901 A.2d 983, 987 (Pa. 2006) (citation and internal quotation omitted). In determining whether an encounter with the police is custodial, "[t]he standard . . . is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized[,]" and "must be determined with reference to the totality of the circumstances." *Commonwealth v. Edmiston*, 634 A.2d 1078, 1085-86 (Pa. 1993). Here, Appellant was not restrained in any way, was not transported against his will, and there was no use of force. (*See* N.T. Suppression Hearing, at 51-57). Thus, it was an investigative detention rather than a custodial detention. *See Commonwealth v. Teeter*, 961 A.2d 890, 899 (Pa. Super. 2008) (*en banc*).

- 11 -

* * *

      The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances.  It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot. . . .

**Commonwealth v. Holmes**, 14 A.3d 89, 95, 96 (Pa. 2011) (internal citations, quotations, and emphasis omitted).  However, while reasonable suspicion of unlawful activity is sufficient to justify a forcible stop, it does not always justify a frisk for weapons.  **See Mackey**, **supra** at *3.

Here, as discussed above, Appellant, who was part of a group of men loitering in a high-crime area, fled at the sight of the police.  (**See** N.T. Suppression Hearing, at 25-26, 29-30, 33-34).  When Officer Gizzi approached Appellant he noted the strong smell of marijuana, and that he was fiddling with his backpack in a furtive manner.  (**See id.** at 51-52).  This was sufficient reasonable suspicion to justify an investigative detention.  **See Commonwealth v. Smith**, 85 A.3d 530, 537 (Pa. Super. 2014) (holding smell of marijuana constituted sufficient reasonable suspicion to justify a seizure); **see also Commonwealth v. Bailey**, 947 A.2d 808, 815 (Pa. Super. 2008), *appeal denied*, 959 A.2d 927 (Pa. 2008).

Moreover, with respect to the pat-down search of an appellant, we have stated:

> An overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that [t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa. Super. 2008) (citations and quotation marks omitted).

Here, Officer Gizzi was in high-crime area in which numerous shootings and two homicides had recently occurred. (*See* N.T. Suppression Hearing, at 25-26, 29-30). Appellant fled at the sight of police, holding a backpack. (*See id.* at 33-34). Appellant smelled of marijuana and when speaking with Officer Gizzi acted in a suspicious manner, fiddling with the backpack and trying to move it away from the police. (*See id.* at 52-54). Officer Gizzi, an experienced police officer, stated that Appellant's activities were making him nervous. (*See id.*). We find that this was sufficient to justify a protective frisk. *See Commonwealth v. Carter*, 105 A.3d 765, 774-75 (Pa. Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 295 (Pa. 2015) (holding that police officer had reasonable suspicion to conduct protective frisk, where defendant was in high-crime area, tried to leave area at sight of police, had bulge in coat pocket, was aware of police presence, and deliberately turned his body away several times to conceal bulge); *Commonwealth v. Brown*, 904 A.2d 925, 928 (Pa. Super. 2006), *appeal denied*, 919 A.2d 954 (Pa. 2007) (stating that unprovoked flight in high-crime area from persons identifiable as police officers is sufficient to establish reasonable suspicion to support investigative

detention). Accordingly, Appellant's claim that that the police lacked reasonable suspicion for a pat-down search lacks merit.

Appellant also contends that the police lacked probable cause to search his backpack. (**See** Appellant's brief, at 26-32). The Commonwealth argues that the warrantless search of Appellant's backpack was justified under the "plain smell" doctrine. (**See** Commonwealth's Brief, at 17-22). We agree.

Our standard of review for determining probable cause is well settled. "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." **Commonwealth v. Griffin**, 24 A.3d 1037, 1042 (Pa. Super. 2011), *appeal denied*, 34 A.3d 82 (Pa. 2011) (citation omitted). We do not ask whether the officer's belief was "correct or more likely true than false. Rather, we require **only** a **probability**, and not a *prima facie* showing, of criminal activity." **Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009) (citations and quotation marks omitted, emphasis in original). When assessing whether probable cause was present, "we must consider the totality of the circumstances as they appeared to the arresting officer." **Griffin**, **supra** at 1042 (citation and internal quotation marks omitted). Further, an officer's experience is a relevant factor in determining probable cause if the officer demonstrates a nexus between his experience and the search or seizure. **See Thompson**, **supra** at 935.

In Pennsylvania, "plain smell" is a concept that is analogized to "plain view" to establish probable cause. *See Commonwealth v. Stoner*, 710 A.2d 55, 59 (Pa. Super. 1998). In an earlier decision, we recognized that a police officer is assumed to know how to recognize the odor of marijuana: "[i]t would have been a dereliction of duty for [the arresting officer] to ignore the obvious aroma of an illegal drug which he was trained to identify." *Commonwealth v. Stoner*, 344 A.2d 633, 635 (Pa. Super. 1975) (holding that so long as officer is justified in being where he is, odor of marijuana is sufficient to establish probable cause). In *Commonwealth v. Stainbrook*, 471 A.2d 1223 (Pa. Super. 1984), we stated:

> We also agree with the Commonwealth's next argument regarding the search of the [defendant's] jacket. The law is clear that a warrantless search is proper if incident to a lawful arrest. A warrantless arrest is lawful if the facts and circumstances within the arresting officer's knowledge are such as would warrant a person of reasonable caution to believe an offense has been or is being committed and the person to be arrested is probably the perpetrator. Under the circumstances of this case which include the surreptitious behavior of the [defendant], the odor of burning marijuana and the discovery of the marijuana underneath the [defendant's] jacket, we believe that there was probable cause to arrest the [defendant]. The subsequent search of the [defendant's] jacket and the seizure of the evidence contained therein, were, therefore, valid as incident to this lawful arrest.

*Stainbrook*, *supra* 1225 (citations omitted).

Here, the record supports the trial court's holding that the search was lawful under the plain smell doctrine. Officer Gizzi was an experienced police officer with special training in detecting the smells of fresh and burnt marijuana. (*See* N.T. Suppression Hearing, at 43-46). He was in a high-

- 15 -

crime area especially noted for drugs and shooting. (*See id.* at 47-49). He was standing next to Appellant in a parking lot; Appellant was fiddling with the backpack and trying to push it away from the police when Officer Gizzi noted a very strong smell of marijuana emanating from the bag, thus making the incriminating nature of it immediately apparent. (*See id.* at 52-56). Moreover, the record shows that the police had a lawful right of access to the marijuana because they had no advance notice that Appellant would be present carrying a backpack reeking of marijuana and thus no opportunity to obtain a warrant before smelling the backpack and seizing it. Thus, we find that the trial court did not err in denying Appellant's motion to suppress evidence found in the search of the backpack.[5] *See Commonwealth v. Copeland*, 955 A.2d 396, 401 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1194 (Pa. 2008) (holding odor of marijuana emanating from vehicle was sufficient to establish probable cause for warrantless search); *Stainbrook*, *supra* at 1224-25; *see also Commonwealth v. Miller*, 56 A.3d 424, 430-31 (Pa. Super. 2012) (holding that police officer's seizure of beer bottles from inside appellant's vehicle lawful under plain view exception where

_____

[5] Moreover, since Officer Gizzi possessed probable cause to arrest Appellant based on the events described above, the police would have inevitably discovered the drugs contained in the backpack when they transported Appellant to the police station and inventoried it. *See Commonwealth v. Zook*, 615 A.2d 1 (Pa. 1992), *cert. denied*, 507 U.S. 974 (1993) (holding police may, as part of standardized inventory procedure, search items in defendant's possession without warrant).

- 16 -

incriminating nature of bottles was immediately apparent and officer lacked advance notice and an opportunity to obtain warrant before commencing search).

In his final claim, Appellant contends that the search of his car was unlawful. (*See* Appellant's brief, at 33-40). In its brief, the Commonwealth "concedes that the record does not support the warrantless search of Appellant's vehicle or the seizure of the handgun from the glove compartment." (Commonwealth's brief, at 23 (unnecessary capitalization omitted); *see id.* at 23-24). On independent review, we agree.

In ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), the Pennsylvania Supreme Court adopted the Federal automobile exception to the warrant requirement, holding that only probable cause and no exigent circumstances "beyond the inherent mobility of a motor vehicle is required." ***Gary***, ***supra*** at 138. In ***Commonwealth v. Cabeza***, 469 A.2d 146 (Pa. 1983), our Supreme Court stated:

> Therefore, we hold that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal. . . .

***Cabeza***, ***supra*** at 148.

Our Supreme Court decided ***Gary*** on April 29, 2014, almost one year after Appellant's suppression hearing. However, in ***Cabeza***, we stated that "our rule in civil cases which applies the law in effect at the time of appellate

decision applies with equal force to criminal proceedings." *Id.* at 148 (citation omitted). In addition, we note that retroactive application is not automatic, and is a matter of judicial discretion. *See Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1099 (Pa. 1991). While no decision has explicitly addressed *Gary*'s retroactivity, both this Court and our Supreme Court have assumed that it applies retroactively. In *Commonwealth v. Hudson*, 92 A.3d 1235, 1241-43 & n.5 (Pa. Super. 2014), *appeal denied*, 106 A.2d 724 (Pa. 2014), a panel of this Court assumed that *Gary* applied to the Commonwealth's appeal from an order suppressing evidence, but ultimately held that police lacked probable cause to search the defendant's vehicle. In *Commonwealth v. Dunn*, 95 A.3d 272, 273 (Pa. 2014) (*per curiam*), our Supreme Court granted allowance of appeal, vacated a decision of this Court, and remanded for reconsideration in light of *Gary*. If *Gary* applied prospectively only, there would be no need to order this Court to reconsider a decision applying the now-superseded limited automobile exception. Therefore, we hold that *Gary* applies retroactively to this case.

Thus, the next question is whether the police had probable cause to search Appellant's vehicle. This Court has stated:

> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution

in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

***Commonwealth v. Runyan***, 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted).

Moreover, in ***Arizona v. Gant***, 556 U.S. 332 (2009), the United States Suprme Court held, in pertinent part:

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. . . .

***Gant***, ***supra*** at 351. Thus, ***Gant*** held that the search-incident-to-an-arrest exception to the warrant requirements of the Fourth Amendment did not apply to a vehicle where the defendant was arrested, could not access and would not be returning to the vehicle. ***See id.***

Here, there was no motor vehicle stop. Rather, as discussed above, Appellant was detained and subsequently arrested prior to his entering the vehicle. The record at the suppression hearing is devoid of any testimony that there was a smell of marijuana emanating from the vehicle or that the police saw any contraband in plain sight. (***See*** N.T. Suppression Hearing, 7/02/13, at 56-58). Rather, the testimony demonstrates that the police searched the vehicle as a matter of course incident to Appellant's arrest. (***See id.***). Lastly,

- 19 -

at the time of the search, the police had already arrested Appellant and he had no access to his vehicle. Thus, we find the police lacked probable cause to conduct a warrantless search of Appellant's vehicle. *See Gant*, *supra* at 351; *Gary*, *supra* at 138; *Runyan*, *supra* at 837-38 (finding probable cause for warrantless search of vehicle under *Gary* where police observed four occupants in parked vehicle in high crime area, police smelled marijuana coming from vehicle, observed bag of marijuana in plain view in vehicle, and driver tried to escape from vehicle).

Further, we agree with Appellant that the police lacked the authority to impound and conduct an inventory search of the vehicle. Our Supreme Court has stated:

> An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. . . .
>
> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.*, have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.
>
> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures

and in good faith and not for the sole purpose of investigation.

A protective vehicle search conducted in accordance with standard police department procedures assures that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function.

*Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013) (citations, footnote, and quotation marks omitted).

Here, the record is devoid of any information that Appellant was driving without a license or was otherwise operating the vehicle unlawfully. Moreover, nothing in the record shows that the vehicle was disabled, damaged, parked in violation of any ordinances, or in any way jeopardizing public safety or creating any type of traffic problems. (*See* N.T. Suppression Hearing, at 55-56, 61, 67). Thus, we are constrained to conclude that the trial court erred in finding that there was a lawful inventory search in the instant matter and erred in failing to suppress the seized firearm. *See Lagenella*, *supra* at 102; *see also Holton*, *supra* at 1249.

Accordingly, for the reasons discussed above we affirm the trial court's denial of the motion to suppress in all respects with the exception of the search of the motor vehicle. Therefore, we affirm the judgment of sentence for Appellant's convictions of all counts of PWID, possession of a controlled substance, and possession of drug paraphernalia. However, we are constrained to vacate the judgment of sentence for Appellant's convictions of

persons not to possess firearms and firearms not to be carried without a license.  We therefore remand the matter for resentencing.

Judgment of sentence affirmed in part and vacated in part.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/18